IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                            *
D2L LTD. and
DESIRE2LEARN, INC.,
                            *
     Plaintiffs,
                            *
          v.                       CIVIL NO.: WDQ-09-1763
                            *
BLACKBOARD, INC.,
                            *
     Defendant.
                            *
```

    *     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

D2L Ltd. and Desire2Learn, Inc. sued Blackboard, Inc. for a declaratory judgment of non-infringement and invalidity of U.S. Patent No. 7,558,853 ("the '853 patent"). Pending are Blackboard's motions to dismiss for lack of subject matter jurisdiction and to transfer the case to the Eastern District of Texas. Also pending are the Plaintiffs' motions to correct the filing date of the complaint and to file a surreply to Blackboard's motion to transfer. For the following reasons, Blackboard's motion to dismiss will be granted in part and denied in part, and its motion to transfer will be granted. The Plaintiffs' motions to correct the filing date of the complaint and to file a surreply will be denied.

I.  Background

    Desire2Learn, a Canadian corporation based in Ontario,
develops and sells online course management (or "eLearning")
software.  Compl. ¶ 4.  D2L Ltd.--a wholly-owned subsidiary of
Desire2Learn--is a Maryland corporation based in Baltimore.  *Id.*
¶ 2.  Blackboard--the Plaintiffs' chief eLearning competitor--is
a Delaware corporation based in Washington, DC.  *Id.* ¶ 6.
Blackboard is the larger company and has a greater share of the
U.S. market.  *Id.*

    Blackboard filed an infringement suit against Desire2Learn
in the Eastern District of Texas on July 26, 2006.  *Id.* ¶ 9.  The
suit alleged that "all [Desire2Learn] products based on the D2L
learning system or platform" infringed U.S. Patent No. 6,998,138
("the '138 patent"), which had been issued to Blackboard on
January 17, 2006.  *Id.*; Pl.'s Opp., Guaragna Decl. Ex. 9.  The
court found that claims 1 through 35 of the patent were invalid
as a matter of law, and a jury found that Desire2Learn infringed
claims 36 though 38.[1]

    On February 17, 2009, Blackboard was issued U.S. Patent No.
7,493,396 ("the '396" patent), which is a continuation of the
'138 patent.  Compl. ¶ 12; Def.'s Mot. to Dismiss 4.  On March

_____

[1] The court denied Desire2Learn's motion for judgment as a matter
of law challenging the jury's verdict.  The Federal Circuit later
reversed that decision.  *See Blackboard v. Desire2Learn, Inc.*,
2009 WL 2215107, (Fed. Cir. July 27, 2009).  The mandate has not
issued.

16, 2009, Blackboard sued Desire2Learn in the Eastern District of Texas for infringing the '396 patent. Compl. ¶ 13. This case is pending.

On March 10, 2009, Blackboard was issued Canadian Patent No. 2,378,200 ("the CA '200 patent"), the Canadian counterpart of the '138 patent. *Id*. ¶ 14. On April 24, 2009, Blackboard sued Desire2Learn in Canada for infringing that patent. *Id*. This case is also pending.

On April 20, 2009, Blackboard filed a complaint with the United States International Trade Commission ("ITC"), alleging that Desire2Learn's products infringed the '138 patent and their importation violated 19 U.S.C. § 1337. *Id*. ¶ 15. The ITC's investigation has been stayed during the appeal from the Texas '138 infringement suit. Guaragna Decl., Ex. 14.

On April 28, 2009, the Patent and Trademark Office issued a notice that the '853 patent would be issued to Blackboard on July 7, 2009. *Id*., Ex. 6. The '853 patent is a continuation of the '396 patent; they share the same subject matter and have been described as "very similar" by Blackboard. *Id*., Ex. 3; Def.'s Mot. to Dismiss 9; Def.'s Mot. to Transfer ¶ 3. Blackboard has alleged that the '853 and '396 patents cover the same Desire-2Learn technology. Def.'s Mot. to Transfer ¶ 6.

Desire2Learn and D2L Ltd. expected that Blackboard would sue for infringement of the '853 patent. Pl's Opp. to Mot to Dismiss

1.  This expectation was based on Blackboard's having asserted other members of the '138 family against Desire2Learn, Pl.'s Opp. 1, and on a statement by Blackboard's General Counsel during settlement negotiations in a previous suit that Blackboard expected to add more continuation patents to the '138 family.[2] Compl. ¶ 18; Def's Mot. to Dismiss, Small Decl. ¶ 10. Desire2Learn thought this statement implied that Blackboard planned to assert the '853 patent against Desire2Learn.  Pl.'s Opp. to Mot. to Dismiss 9.

On June 29, 2009, Desire2Learn contacted Blackboard's counsel to find out whether Blackboard planned to assert the '853 patent in the ITC suit.  Def.'s Mot. to Dismiss, Nadel Decl. ¶ 5. Blackboard's counsel responded that he did not know Blackboard's plans.  *Id*. ¶ 3-4.  On July 6, 2009, Desire2Learn requested a "standstill agreement" with Blackboard, under which neither party would sue on the '853 patent for 30 days after its issuance. Def.'s Mot. to Dismiss, Nadel Decl. ¶ 5.  Blackboard declined because it had not investigated whether Desire2Learn's products infringed the '853 patent.  Def.'s Mot. to Dismiss, Ex. B.

On July 7, 2009[3], the Plaintiffs filed this complaint, which

---

[2] The '138 family includes the '138, '396, and '853 patents and counterparts to the '138 patent in Australia, Canada, India, South Korea, Mexico, New Zealand, and Singapore.  Def.'s Mot. to Dismiss 7-8.

[3] Blackboard argues that the filing date of the complaint is July 6, 2009 as indicated by the Notice of Electronic Filing and the

seeks a declaratory judgment that the '853 patent is invalid and has not been infringed. Paper No. 1. On August 10, 2009, Blackboard moved to dismiss for lack of subject matter jurisdiction. Paper No. 16. On September 15, 2009, Blackboard moved to transfer venue to the Eastern District of Texas. Paper No. 27.[4] On October 29, 2009, the Plaintiffs moved to file a surreply to Blackboard's motion to transfer. Paper No. 34.

II. Analysis

    A.    Blackboard's Motion to Dismiss for Lack of Subject Matter Jurisdiction

        1.    Standard of Review

The plaintiff has the burden of proving subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When, as here,

---

Electronic Docket. Blackboard contends that if the complaint was filed on July 6, one day before the issuance of the '853 patent, the Court lacks subject matter jurisdiction. The Plaintiffs counter that although the Notice of Electronic Filing indicates that the complaint was filed on July 6, 2009, it also indicates that the complaint was "entered" at 12:01 a.m. on July 7, 2009. They argue that the time of "entry" controls. Under Part III.G.2 of this Court's "Electronic Filing Requirements and Procedures for Civil Cases," a document "is 'filed' [when] the Notice of Electronic Filing states it was entered." Because the complaint was "entered" on July 7, 2009, it was "filed" on that date. Because there is no need to correct the filing date, the Plaintiffs' motion to correct will be denied as moot.

[4] On August 10, 2009, Blackboard sued Desire2Learn in the Eastern District of Texas for infringing the '853 patent. Def.'s Mot. to Transfer ¶ 4. Blackboard then moved the Texas court to consolidate its '853 suit with the '396 suit. *Id.* Judge Clark, to whom both cases are assigned, will decide that motion after this Court's decision on Blackboard's motions. *Id.*

"the challenge is made, not to the sufficiency of the juris-
dictional allegations, but to the underlying facts supporting
those allegations, a trial court may go beyond the allegations of
the complaint and may consider evidence by affidavit, depositions
or live testimony without converting the proceeding to one for
summary judgment." *Kim v. United States*, 609 F. Supp. 2d 499,
504 (D. Md. 2009) (*quoting Adams v. Bain*, 697 F.2d 1213, 1219
(4th Cir. 1982)) (internal quotation marks omitted).

　　　　2.　　Blackboard's Motion

　　　The Plaintiffs assert that this Court has subject matter
jurisdiction under the Declaratory Judgment Act[5] ("the DJA") and
28 U.S.C. § 1338.　Blackboard counters that the Court lacks
jurisdiction because this suit is not a "case" or "controversy"
under Article III of the Constitution.

　　　Under the DJA, "[i]n a case of actual controversy within its
jurisdiction . . . any court of the United States . . . may
declare the rights and other legal relations of any interested
party seeking such declaration."　28 U.S.C. § 2201 (2006).[6]
Jurisdiction under the DJA is restricted by Article III to the
adjudication of "Cases" or "Controversies."　U.S. Const. art.

_____

[5] 28 U.S.C. § 2201.

[6] Section 1338 gives the district court subject matter juris-
diction over actions for declaration of non-infringement and
invalidity.　*See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d
1329, 1335 n.3 (Fed. Cir. 2008).

III, § 2; *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). The DJA's "requirement of a 'case of actual controversy' simply [acknowledges] this Constitutional requirement." *Prasco*, 537 F.3d at 1335.

    a.   Article III's Case or Controversy Requirement

A case or controversy requires a dispute that is "definite and concrete, touching the legal relations of the parties having adverse legal interests . . . and admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. at 1335-36 (*citing MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)). "[T]here is no bright-line rule for determining whether an action satisfies [this] requirement"; the Court's analysis "must be calibrated to the particular facts of each case." *Id*. at 1336 (internal citations and quotation marks omitted). The Court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[7] *Id*. (*quoting*

_____

[7] The Supreme Court's decision in *MedImmune* rejected the "reasonable apprehension suit test" as the sole test for jurisdiction in favor of an "all the circumstances" test. *Prasco*, 537 F.3d at 1336. *MedImmune*'s "more lenient legal standard . . . enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech., Inc. v. Mosaid*

*MedImmune*, 549 U.S. at 127.).

The Federal Circuit has viewed "this inquiry through the lens of [Article III] standing" doctrine. *Id*. at 1338. If the declaratory judgment plaintiff can show an injury in fact traceable to the patentee, the dispute is a case or controversy under Article III. *See id*. "A patentee can cause . . . an injury in a variety of ways [including] by creating a reasonable apprehension of an infringement suit, demanding the right to royalty payments, or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id*. at 1339. D2L Ltd. and Desire2Learn contend that they were injured because Blackboard created a reasonable apprehension of an infringement suit on the '853 patent. The Court must determine whether each plaintiff has standing. *See Brown v. Hovatter*, 2006 WL 2927547, at *3 (D. Md. Oct. 11, 2006).

      b.    Reasonable Apprehension of Suit

"The reasonableness of a party's apprehension [of suit] is judged using an objective standard." *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002).[8] "Although the

---

*Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008). "[P]roving a reasonable apprehension of suit is [now] one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test." *Prasco*, 537 F.3d at 1336.

[8] Blackboard contends that because *MedImmune* struck down the test for subject matter jurisdiction previously applied in the Federal Circuit, cases applying the pre-*MedImmune* test are no longer good

best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required." *Id*. The Court looks to the totality of the circumstances as they were when the declaratory judgment suit was filed. *Id.*; *Prasco*, 537 F.3d at 1337. A plaintiff "must show more than the nervous state of mind of a possible infringer, but does not have to show that the patentee is poised on the courthouse steps." *Vanguard Research*, 304 F.3d at 1254-55.

The Plaintiffs argue that Blackboard created a reasonable apprehension of suit on the '853 patent by (1) suing on the '138 and '396 patents, which cover the same technology; (2) implying in settlement negotiations that it would assert the '853 patent; and (3) refusing to agree to the standstill agreement. Blackboard counters that prior litigation on different patents is insufficient to create jurisdiction; an affirmative act with respect to the patent-in-suit is required. Blackboard also

---

law. As *Prasco* explained, *MedImmune* rejected the "reasonable apprehension of suit test as the *sole* test for jurisdiction[;] it did not . . . do away with the relevance of a reasonable apprehension of suit" in the jurisdictional analysis. *Prasco*, 537 U.S. at 1336 (emphasis added).

Pre-*MedImmune* cases are still good authority on *what constitutes* reasonable apprehension, and that reasonable apprehension may establish a justiciable declaratory judgment controversy. *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344-45 (Fed. Cir. 2007) (*citing Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2005) and *Goodyear Tire & Rubber Co. v. Releasesomers, Inc*., 824 F.2d 953, 955 (Fed. Cir. 1987)).

contends that it never threatened to enforce the '853 patent and that its refusal to enter into the standstill agreement cannot create a reasonable apprehension of suit. Blackboard also argues that even if Desire2Learn can prove subject matter jurisdiction, D2L Ltd. cannot do so because it has not been a party to any suit by Blackboard.

"Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." *Prasco*, 537 U.S. at 1341. Prior litigation between the parties over the technology covered by the patent at issue is "sufficient to give [the plaintiff] an objective inference of an impending infringement suit."[9] This is

---

[9] *Goodyear Tire & Rubber Co. v. Releasesomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987). In *Goodyear*, the plaintiff sought a declaratory judgment of the invalidity, non-infringement, and non-enforceability of two patents. The patentee had previously sued the plaintiff for misappropriation of trade secrets related to the technology covered by the patents-in-suit. The Federal Circuit held that because the previous suit involved the technology covered by the patents, the plaintiff had a reasonable apprehension of an infringement suit even though the previous suit did not involve the patents and the defendant's president had stated that he had not authorized an infringement suit against the plaintiff. *See Goodyear*, 824 F.2d at 955; *see also Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1159-60 (Fed. Cir. 2006) ("[B]y suing earlier for the same technology as is now covered by the patents in suit, the patent holder has engaged in a course of conduct that shows a willingness to protect that technology and has created a reasonable apprehension of suit.") (internal citations omitted); *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2005) (finding reasonable apprehension when defendant had sued for misappropriation of trade secrets regarding the same technology and stating that "[f]iling a lawsuit for patent infringement would be just another logical step in [the defendant's] quest to protect

so even when the prior suit did not involve the patent in the declaratory judgment action and there had been no threat to enforce that patent by the defendant. *See id.* at 555-56.

Like the parties in *Goodyear*, Desire2Learn and Blackboard have "a clear history of adverse legal interests as shown by the ongoing suits" in Texas, Canada and the ITC. *Id.* at 955. These suits have involved patents that are related to the '853 patent and cover similar technology.

Blackboard also rejected a standstill agreement. Although a "patentee's refusal to given assurances that it will not sue . . . is not dispositive" on the issue of reasonable apprehension, it is "relevant to the determination." *Prasco*, 537 F.3d at 1341. Small's comment in settlement negotiations that Blackboard expected to receive additional continuation patents on the '138 patent is also relevant. Blackboard's contention that Small did not intend to imply that Blackboard planned to assert the future patents fails to recognize that the reasonable apprehension inquiry is objective. Given that the parties were in litigation

its technology.").

*Prasco*, on which Blackboard relies, is consistent with *Goodyear* and its progeny. There, the Federal Circuit held that even though there was prior litigation between the parties, the totality of the circumstances did not give rise to a reasonable apprehension of suit. The court stated that "one prior suit concerning *different products* covered by *unrelated patents* is not the type of pattern of prior conduct that makes reasonable an assumption that [the defendant] will also take action against [the plaintiff] regarding its new product." *Prasco*, 537 F.3d at

regarding two members of the '138 family, it was reasonable for Desire2Learn to interpret Small's comment as a threat to assert future patents. These circumstances suggest that Desire2Learn had a reasonable apprehension of suit on the '853 patent, an "injury" sufficient for subject matter jurisdiction.

D2L Ltd. and Blackboard do not have a history of litigation. D2L Ltd. has not been a party to a previous suit between Blackboard and Desire2Learn; thus, these prior suits are not relevant to whether there is a case or controversy between Blackboard and D2L Ltd. *See Prasco*, 537 F.3d at 1341 n.10. The Plaintiffs argue that D2L had a reasonable apprehension of suit on the '853 patent because D2L Ltd. had been included in the term "Desire-2Learn" in Blackboard's discovery requests in the prior suits against Desire2Learn. This is not sufficient to establish a reasonable apprehension of suit. *See id*. In fact, it shows that Blackboard was aware of D2L Ltd.'s existence and repeatedly chose *not* to sue it for infringement. D2L Ltd. provides no reason why Blackboard would proceed differently in a suit on the '853 patent; thus, it cannot show reasonable apprehension of suit. D2L Ltd. does not allege any other injury that would create standing. Thus, it cannot prove subject matter jurisdiction.

Accordingly, Blackboard's motion to dismiss for lack of subject matter jurisdiction will be denied as to Desire2Learn and

1341. (emphasis added).

granted as to D2L Ltd.

B.   Blackboard's Motion to Transfer Venue to the Eastern
     District of Texas

1.   28 U.S.C. § 1404

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  On a motion to transfer, the Court first asks whether the action could have been brought in the transferee district.  If so, then the Court considers: (1) the weight accorded to the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice. *Tech USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009).  "[T]he statute provides no guidance as to the weight given . . . [to] . . . the factors[.]"  *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3847 (2005) (collecting cases).  Some courts consider convenience the most important factor; others have stated that "[t]he interest of justice may be decisive . . . even though the convenience of the parties and witnesses point in a different direction."  *Byerson*, 467 F. Supp. 2d at 635; 15 Wright, Miller & Cooper, § 3854 (collecting cases).  The Court's decision "necessarily must turn on the particular facts of the case," and it "must consider all the relevant factors to determine whether .

. . on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Byerson*, 467 F. Supp. 2d at 632; 15 Wright, Miller & Cooper, § 3847.

      a.    Whether the Suit Could Have Been Brought in the Eastern District of Texas

To establish that an action could have been brought in the proposed transferee district, the movant must show that the district is a proper venue and that the transferee court would have personal jurisdiction over the defendant. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Under 28 U.S.C. § 1391(b), venue is proper in a judicial district where (1) any defendant resides or (2) the claim arose.[10] In a state,

---

[10] In a declaratory judgment action alleging invalidity and non-infringement, venue is governed by the general venue statute, 28 U.S.C. § 1391, not, as Desire2Learn contends, the special patent venue statute, 28 U.S.C. § 1400(b). *See General Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964); *Emerson Elec. Co. v. Black & Decker Mfg. Co.*, 606 F.2d 234 (8th Cir. 1979)(Markey, J.); 8 Donald S. Chisum, *Chisum on Patents* § 21.02 (Venue) (1997).

*Black & Decker* was a declaratory judgment action for invalidity and non-infringement. The defendant-patentee moved to transfer the case to a district where an infringement suit was pending between the defendant and a customer of the declaratory judgment plaintiff. The plaintiff opposed transfer on venue grounds; venue in the transferee district would have been proper for the defendant but not the plaintiff. The plaintiff argued that transfer would turn the declaratory judgment suit into an infringement action, and because the plaintiff could not have been sued there for infringement, the declaratory judgment action should not be transferred there.

The Eight Circuit disagreed. "The action being transferred

such as Texas, that has more than one judicial district, a
corporate defendant "resides" in any judicial district where its
contacts would be sufficient to subject it to personal juris-
diction if the district were a separate state.  28 U.S.C. §
1391(c) (2006).

It is uncontested that Blackboard has sufficient contacts
with the Eastern District of Texas for personal jurisdiction.
*See* Def.'s Mot. to Transfer, Karen Heppler Decl. ¶¶ 2-3, Sept.
15, 2009.  Thus, venue is proper under § 1391.  Because venue is
proper and Blackboard would be subject to personal jurisdiction,
this action could have been brought in the Eastern District of
Texas.

b.   The Plaintiff's Choice of Venue

"Ordinarily, a plaintiff's choice of forum is entitled to
substantial weight."  *Lynch v. Vanderhoef Buliders*, 237 F. Supp.
2d 615, 617 (D. Md. 2002).  "That weight is lessened, however,
when either (1) the chosen forum is not the plaintiff's home, or
(2) the chosen forum has little or no connection to the events

---

is one for declaratory judgment . . . The transfer order does not
. . . convert an action for declaratory judgment into an action
for infringement . . . [or] . . . convert a declaratory judgment
plaintiff into an infringement defendant . . . What counts . . .
is that the defendant [in the declaratory judgment action] could
have been sued [in the transferee district]."  *Black & Decker*,
606 F.2d at 239-40 (8th Cir. 1979).

The Plaintiffs' argument that transfer should be denied
because the Eastern District of Texas would be an improper venue
for D2L Ltd. is similarly unavailing.

15

giving rise to the litigation." *Tse v. Apple Computer*, 2006 WL
2583608, at *2 (D. Md. Aug. 31, 2006).[11] When the plaintiff is
foreign (*i.e.*, international) and the events giving rise to suit
did not occur in the district, the weight accorded its choice of
forum is also lessened. *See Mamani v. De Lozada Sanchez
Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008). The weight
is also lessened "whe[n] a plaintiff files a preemptive
declaratory judgment action in order to deprive the 'natural
plaintiff'--the one who wishes to present a grievance for
resolution by the court--of its choice of forum." *Piedmont
Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc*.,
402 F. Supp. 2d 609, 616 (M.D.N.C. 2005)(*citing Hyatt Int'l Corp.
v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002)).

Desire2Learn[12], a Canadian corporation headquartered in
Ontario, is a foreign plaintiff; the District of Maryland is not
its home forum. Maryland has no connection to the events giving

---

[11] *See also Mamani v. De Lozada Sanchez Bustamante*, 547 F. Supp.
2d 465, 473 (D. Md. 2008) (*quoting Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 255-56 (1981)) ("[W]hen the plaintiff's home forum
has been chosen, it is reasonable to assume that this choice is
convenient. When the plaintiff is foreign, however, this
assumption is much less reasonable."); *B&G Equip. Co. v. J.T.
Eaton & Co.*, 2006 WL 2813886, at *2 (D. Md. Sept. 27, 2006)
("[T]he plaintiff's choice of forum is entitled to little
consideration where . . . he has sued in a district other than
the district in which he resides.")

[12] Because the Court lacks subject matter jurisdiction over D2L
Ltd.'s claims, its residency is irrelevant for the purposes of
the motion to transfer.

rise to this litigation--the design and production of

Desire2Learn's eLearning products--which took place in Canada.[13]

*See Tse*, 2006 WL 2583608, at *2.  This action appears to be meant

to deprive the "natural plaintiff," Blackboard, of its choice of

forum.[14]  Thus, Desire2Learn's choice of forum is entitled to

little weight.

     c.    Witness Convenience and Access

     Blackboard argues that the Eastern District of Texas is the

more convenient forum because the pending suit on the '396 patent

will likely involve the same witnesses as this suit.  Because the

suits could be consolidated upon transfer, Blackboard contends

that transfer supports witness convenience because the witnesses

would only have to participate in one trial.  Desire2Learn

challenges Blackboard's assumption that transfer would result in

consolidation with the '396 case.  It also argues that (1) the

District of Maryland is a more convenient forum for party

witnesses because it is closer to the parties' headquarters than

the Eastern District of Texas, and (2) several third-party

---

[13] *See* Def.'s Mot. to Transfer, Ex. 4.

[14] *See* Pl.'s Opp to Mot. to Transfer 11-12.  In their opposition,
the Plaintiffs decry Blackboard's "litigation strategy of
multiple patents in multiple forums."  *Id*. at 11.  Given this
statement and the timing of the filing of this suit--12:01 a.m.
on July 7, 2009, literally the minute the '853 patent issued.--
there is little doubt that the Plaintiffs wanted to prevent
Blackboard from filing an infringement suit in the forum of its
choice.

witnesses are subject to this Court's subpoena power but not the Texas court's power. The third-party witnesses live in Maryland, Delaware, the District of Columbia, and Virginia; thus, Desire2Learn argues, this Court is more convenient for them than the Eastern District of Texas.

   1.  The Potential for Consolidation

Blackboard contends that the witnesses who will testify in the Eastern District Texas trial will testify at this trial.[15] Because of the similarity of the patents and the technology they cover, Blackboard argues that the two cases could be consolidated for trial upon transfer. Because one trial on both patents in Texas would be more convenient for witnesses, Blackboard maintains that transfer is in the interest of witness convenience.

Desire2Learn notes that Blackboard's argument assumes that the '396 and '853 cases would be consolidated, which is not certain. In a hearing on the potential for consolidation, Judge Clark of the Eastern District of Texas indicated that consolidation after transfer may be unwarranted because the '396 and '853 cases are operating on different schedules, the '396 case having been filed in March 2009. *See* Def.'s Mot. to Transfer, Ex. 1. However, Judge Clark did not rule out the possibility of consolidation, and its potential supports a transfer for witness

---

[15] The '396 suit is scheduled for trial in Texas in November 2010.

convenience.

2. Access to Third Party Witnesses

Desire2Learn asserts that several potential third-party witnesses live within the subpoena power of this Court and not the Eastern District of Texas.[16] If this case is transferred, Desire2Learn argues that it could be deprived of the witnesses' testimony because it will be inconvenient for them to travel to Texas and Desire2Learn will be unable to compel them to testify. Blackboard argues that this assertion is entitled to little weight because Desire2Learn does not explain the relevance of the potential testimony or why deposition testimony, which could be compelled even if the case is transferred, would not suffice.

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh v. Microtek Int'l*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).[17]  Courts generally prefer live testimony where

---

[16] They are John Barkley of Germantown, Maryland; Mike Pettit of Washington, DC; Udo Schuermann of Rockville, Maryland; Fred Hofstetter of Newark, Delaware; Stephen Gilfus of Chantilly, Virginia; and Timothy Chi of Bethesda, Maryland.

[17] Although the moving party bears the ultimate burden of establishing the propriety of transfer, courts have imposed the burden of proffering details about witnesses and potential testimony to non-moving parties who oppose transfer on the ground of witness inconvenience. *See, e.g.*, *Koh*, 250 F. Supp. 2d at 637; *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D.

possible.  *See, e.g., Davis v. St. Paul-Mercury Indem. Co.*, 294

F.2d 641, 647 (4th Cir. 1961); *Samsung Elecs. Co. v. Rambus,*

*Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005).  As the Eastern

District of Texas recently noted, patent actions pose significant

obstacles to this preference, but the trier of fact may assess

the credibility of recorded witnesses:

> Typically, witnesses in patent cases come from all
> over the country or world . . . . Thus, regardless of
> where the trial is held, many witnesses, including
> third-party witnesses, will likely need to travel a
> significant distance.  If this Court cannot compel a
> witness's attendance at trial, neither party is
> prevented from using the witness's videotaped
> deposition . . . . Rarely will one location be
> convenient for everyone.

*Aloft Media, LLC v. Adobe Sys., Inc.*, 2008 WL 819956, at *5 (E.D.

Tx. Mar. 25, 2008).[18]

---

Va. 2001) (giving little weight to the presence of the
plaintiff's non-party witnesses in or near the forum because
plaintiff had "not sufficiently explained why *de bene esse*
depositions of nonparty witnesses outside the subpoena power
would be inadequate during a *Markman* hearing or the trial and why
Plaintiff would need their live testimony").

     As one district court in this circuit has explained,
"[w]itness convenience is often dispositive in transfer deci-
sions. But the influence of this factor cannot be assessed in the
absence of reliable information identifying the witnesses
involved and specifically describing their testimony." *Bd. of
Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp.
1253, 1258 (E.D. Va. 1988).  This explanation makes clear why any
party asserting witness inconvenience must make a particularized
showing.

[18] A district court in this circuit has reached a similar
conclusion in a declaratory judgment action on patent
enforceability: "Although live testimony is the preferred mode of
presenting evidence, when non-party witnesses are unavailable, .

Although Desire2Learn provides some explanation of the
relevance of the potential testimony of Barkley, Pettit,
Schuermann, and Hofstetter,[19] it does not explain why their
depositions would be inadequate or why they would not testify
without a subpoena.[20]

Desire2Learn argues that Barkley and Hofstetter developed
software that is relevant to a determination of the '853 patent's
validity. Desire2Learn would introduce their testimony to
establish that there was prior art that anticipated the '853
patent under 35 U.S.C. § 102 or rendered the patent obvious under
35 U.S.C. § 103. Barkley is alleged to have developed prior art
on "Role Based Access Control ("RBAC")," a system that controls
the level of access to an online course based on the user's role

---

. . videotaped depositions often are sufficient. Somewhat less
weight is given to witness inconvenience when a party is unable
to demonstrate . . . that videotaped deposition testimony will be
inadequate." *Samsung*, 386 F. Supp. 2d at 719.

[19] Desire2Learn does not explain the relevance of the testimony of
Gilfus and Chi; it merely asserts that they are inventors of the
'853 patent. As Blackboard notes, Gilfus and Chi are two of the
seven inventors of the patent; it is not clear why Gilfus's and
Chi's testimony would be of special relevance and not be
cumulative.

[20] Desire2Learn attempts to supplement its arguments for witness
inconvenience in a surreply that it has requested leave to file.
It also attempts to raise additional arguments about the
propriety of venue for D2L Ltd. in the Eastern District of Texas,
which, because the Court lacks subject matter jurisdiction over
D2L's claims, are now moot. Under Local Rule 105, "[u]nless
otherwise ordered by the Court, surreply memoranda are not
permitted to be filed." Because Desire2Learn's surreply
memorandum merely attempts to make arguments it could have made

(*e.g.*, teacher or student).  The '853 patent discloses such a system.  Def.'s Mot. to Transfer Ex. 2.  Hofstetter is alleged to have developed a prior art course management system known as SERF and to have given a demonstration to an inventor of the '138 patent, Blackboard employee, Matthew Pittinski.  Assuming Desire2Learn will argue that Barkley and Hofstetter's work anticipated Blackboard's--*i.e.*, that Blackboard did not invent the subject matter of the '853 patent--it is understandable that Desire2Learn would wish to present Barkley and Hofstetter's live testimony.  Determining when they had worked on these systems, whether they had abandoned their work, and what they had revealed about their work to Blackboard could turn on their credibility.

However, Desire2Learn does not state why Barkley and Hofstetter could not be expected to testify without a subpoena. Blackboard notes that Hofstetter testified in the Eastern District of Texas at the trial on the '138 patent.  Desire2Learn does not explain why it would not expect him to do so again.  *See Finmeccanica SPA v. General Motors Corp.*, 2007 WL 4143074, at *6 (E.D. Va. Nov. 19, 2007) (giving less weight to plaintiff's contention of non-party witness inconvenience when witness had already shown willingness to travel for related matter).  Nor does Desire2Learn explain why video depositions for these witnesses would be inadequate.

_____

in its Opposition, the motion to file a surreply will be denied.

The relevance of Pettit's potential testimony appears to be that while working at Blackboard, he was copied on an email from Barkley to Robert Alcorn, one of the inventors of the '853 patent and a current Blackboard employee. The email described Barkley's work on RBAC. Desire2Learn apparently plans to offer the email to show that Barkley had previously invented the "access control technology" that is the subject matter of the '853 patent, and that Blackboard was aware of that invention. However, Desire-2Learn does not explain why Pettit's testimony on this issue is necessary or why the live testimony of Robert Alcorn, a Blackboard employee, would not be sufficient. Because Desire2Learn does not specify Pettit's testimony, it is impossible to determine whether it would be noncumulative or whether his live testimony would be desirable.

Schuermann worked with Barkley, Alcorn, and Pettit on the "Instructional Management Systems Project (the "IMS Project")," a goal of which was to "develop standards for interoperable software components to be used in online course management systems, and to develop a prototype system." Pl.'s Opp. to. Mot. to Transfer 6. Desire2Learn contends that the IMS Project sought to develop an online course management system similar to one covered by the '853 patent. Desire2Learn does not explain what information Schuermann might have or what his testimony might consist of. Therefore, it is not possible to determine whether

it would be noncumulative or whether live testimony would be preferable.

Desire2Learn has produced evidence that two potential third-party witnesses, Barkley and Hofstetter, could offer relevant, noncumulative testimony and that their live testimony would be preferable. Although Desire2Learn's showing of potential inconvenience for these witnesses deserves some weight, that weight is lessened by the potential for consolidation with the '396 suit in Texas and the potential for videotaped depositions.

   3.   Convenience for Party Witnesses

Inconvenience to party witnesses is given less weight than inconvenience to non-party witnesses because the former are "presumed to be more willing to testify in a different forum," *Samsung Elecs. Co. v. Rambus, Inc*., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). However, a showing of inconvenience on this factor is entitled to some weight. Blackboard argues that the potential for consolidation supports the transfer for the convenience of party witnesses because the witnesses would only have to attend one trial. Desire2Learn challenges the assumption of consolidation, and contends that the District of Maryland is more convenient than the Eastern District of Texas for party witnesses because Maryland is closer to the parties' headquarters.

Desire2Learn's argument assumes that the party witnesses

24

will come from headquarters.  Blackboard notes that it is likely

to call as witnesses the inventors of the '853 patent and that

only two of the five inventors who work for Blackboard live in

the Washington, DC area.  The others live in Florida, Colorado,

and Arizona.  Maryland is presumably not more convenient than

Texas for these potential witnesses. Desire2Learn does not state

whose testimony it would offer at trial.  At the trial on the

'138 patent, five of Desire2Learn's officers and employees

testified.  Def.'s Mot. to Transfer 3.  At least three of these

witnesses live in Canada.  *Id*. at 5.  Blackboard expects that

Desire2Learn will offer their testimony in the '853 trial.  *Id*.

The headquarters' distance from the Eastern District of

Texas weighs against transfer, but this weight is diminished by

the possibility of consolidation in Texas and the potential

inconvenience of Maryland for several of the '853 inventors.

d.   The Convenience of the Parties

The parties' arguments about their convenience are similar

to the arguments about the convenience of party witnesses;

Blackboard argues that litigating in one forum is more convenient

than two, and Desire2Learn responds that Maryland is closer to

the parties' headquarters than Texas.  There are additional

circumstances that make this issue closer than the convenience of

party witnesses.  Even if the cases are not consolidated, there

are economies that would result from having the cases in the

same forum: the parties would only have to deal with one court, one clerk's office, and one set of local rules--which the parties are familiar with from the '138 litigation. Further, because the parties have agreed that discovery in the '396 case will apply to the '893 case, see Def.'s Mot. to Transfer, Ex. 1 at 20, transfer would be advantageous because any discovery disputes could be submitted to a single decisionmaker. The distance of Texas from the parties' headquarters weighs against transfer, but this is offset by the potential for consolidation and the advantages that could result even without consolidation. The convenience of the parties is a neutral factor.

   e.   The Interest of Justice

   "Consideration of the interest of justice factor is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Howard Univ. v. Watkins*, 2007 WL 763182, at *5 (D. Md. Mar. 12, 2003). The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum. *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 938 (E.D. Va. 2005).[21] Transfer is favored not only because litigation of

---

[21] *See also Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967) (ordering transfer to prevent "an extravagantly wasteful and useless duplication of time and effort of the federal courts by the simultaneous trial of two complex and elaborate [patent] cases involving substantially the same factual issues); *Mamani v. Bustamante*, 547 F. Supp. 2d 465 (D. Md. 2008).

related claims in the same tribunal may facilitate efficient pre-trial proceedings and discovery but also because it avoids inconsistent results. *Id.* (*citing Berg v. First American Bank-shares, Inc.*, 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983)). Transfer is favored even if it is uncertain whether the transferred case will be consolidated with the related pending case.[22]

The interest of justice also strongly favors transfer when a party has previously litigated a case involving similar issues and facts before the transferee court. *Id.*[23] The transferee court's familiarity with the facts of the case and the applicable law promotes judicial economy. *Id.* Litigation in the same court avoids duplicative litigation when one court has already invested substantial time and energy in the related case. *Id.*

Blackboard sued Desire2Learn for infringing the '138 patent in 2006 in the Eastern District of Texas; the case was assigned

---

[22] *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 363 (W.D.N.C. 2003) ("While there is obviously no guarantee that [the] cases may be consolidated, it is nonetheless expedient to allow a court that is already familiar with [the] essential arguments to adjudicate this case . . . . It is inefficient to have two different courts . . . become familiar with and adjudicate essentially the same claims[.]"); *Fairfax Dental Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 n.2 (E.D.N.Y. 1986); *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1313 (N.D. Ill. 1993); *Berg*, 576 F. Supp. at 1244 n.1 (S.D.N.Y. 1983); 17 James W. Moore *et al.*, *Moore's Federal Practice*, § 111.13.

[23] *See also LG Elecs., Inc. v. Advance Creative Comp. Corp*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001); *Wheeling-Pittsburgh Steel Corp. v. EPA*, 1999 WL 111459, at *4 (Mar. 3, 1999); *Job Haines*

to Judge Clark.  In February 2008, after extensive discovery and
a claim construction conference, Judge Clark presided over a two-
week jury trial and a separate bench trial.  In March 2009,
Blackboard sued Desire2Learn for infringing the '396 patent, and
the case was again assigned to Judge Clark.  That case is
proceeding through discovery, and Blackboard has filed its
infringement contentions.  The '853 patent has the same
inventors, drawings, and specification as the '396 and '138
patents.  The same technology--Desire2Learn's Learning Environ-
ment version 8.3--will be involved in the '396 and '853 suits;
earlier versions (8.2.2 and earlier) were involved in the '138
suit.

    Judge Clark's experience with the parties and his knowledge
of the facts and law from the '138 and '396 suits weighs very
strongly in favor of transferring the '853 suit.  Transfer will
promote judicial economy and avoid the possibility of inconsis-
tent construction of the '396 and '853 patents, which cover the
same technology and have many overlapping claims.  Transfer is
appropriate even if the cases cannot be consolidated because much
of Judge Clark's work on in the '138 and '396 suits will
presumably be applicable to the '853 suit.

    The Court finds that the interest of justice in transferring
this case outweighs any potential inconvenience to the parties or

---

*Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996).

witnesses.  Accordingly, Blackboard's motion to transfer venue to the Eastern District of Texas will be granted.

III. Conclusion

For the reasons stated above, Blackboard's motion to dismiss for lack of subject matter jurisdiction will be granted in part and denied in part, and its motion to transfer venue will be granted.  The Plaintiffs' motion to amend the filing date of the complaint and their motion to file a surreply will be denied.


<u>December 2, 2009</u>
Date

_____/s/_____
William D. Quarles, Jr.
United States District Judge